Moncure, P.,
delivered the opinion of the court.
This is a writ of error to a judgment of the circuit court of Culpeper county, rendered on the 8th day of April, 1875, in an action of ejectment brought in the said court by John S. Quesenberry and J. M. Quesenberry against John S. Barbour. The action was brought to recover a tract of land lying in said county, estimated to contain three hundred and twenty-three acres. The defendant put in a plea of not guilty to the action, to which the plaintiffs replied generally; and upon that issue the case w'as tried. And on the said 8th day of April, 1875, came the parties by their attorneys, and neither party requiring a juiy, but both parties submitting all matters of law and fact in the case to the judgment of the court, and the court having heard the testimony submitted on both sides and the arguments of counsel, it was thereupon considered and adjudged by the court that the plaintiffs take nothing by their action, but that the defendant go thereof without da}’, and recover of the plaintiffs his costs about his defence in that behalf expended.
The plaintiffs tendered a bill of exceptions to the opinion and judgment of the court, which was made a part of the record, and is to the following effect:
“ The plaintiffs, to maintain the issue joined on their part, read in evidence to the court the affidavit of A. S. Fant, which on the same day was sworn to in open court, was admitted as evidence by agreement of counsel, and is to the following effect:
“ I, Albert S. Fant, do certify that the tract of land claimed by the plaintiffs in this suit is the same laud devised by Geo. S. Fant to John P. Fant, and by the latter conveyed, by deed dated 15th of November, 1847, to Albert Quesenberry in trust for the sole and separate use of Julia A Quesenberry, wife of said Albert, during her life, and at her death for the benefit of her children; *493 that said Albert took possession of said land under said deed, and held the same until some time in the year 1854; that said Julia A. died in the year 1870, and that the plaintiffs are her only children now living; that said defendant is now in possession of said tract of land, which lies in the county of Culpeper; that affiant and said Julia are children of John P. Fant. The names of the children of Julia A. Quesenberry, now living, are J. S. Quesenberry, who is now about thirty-six years of age, and J. M. Quesenberry, who is now about thirty-four years of age. There were two daughters of said Julia A. Quesenberry, to-wit: Frances Ann and Lucy A., who died between the years 1860 and 1870, never having had any issue; the said Frances A. being about twenty-five years of age at the time of her death in 1869; and the said Lucy A. about fifteen years of age at the time of her death, and both having died in the lifetime of their mother, the said Julia A. Their father, the said Albert, is still living. Their mother had no other children than as aforesaid, except the first two, who were twins, and died in less than twelve months after their birth. The children of Julia A. Quesenberry had no other property known to the affiant than their interest in the said tract » of land.
A. S. Fant.”
“April 7th, 1875.”
The plaintiffs then introduced as evidence the survey and plat of the land in controversy, made under an order of the court in the cause.
They next introduced as evidence the deed from John P. Fant to Albert Quesenberry, dated 15th ^November, 1847, which is set out in the record. It is “ between John P. Fant of the first part, Albert Quesenberry of the second part, and Julia A. Quesenberry of the third part.” It “witnesseth that the said John P. Fant, as well for *494 and in consideration of the natural love and affection he has and bears for his daughter Julia A. Quesenberry as of one dollar to him in hand paid by the said Albert Quesenberry,” &c., “ hath given, granted, sold and confirmed, and by these presents doth give, grant, sell and confirm unto the said Albert Quesenberry, his heirs and assigns forever, a certain tract or parcel of land,” &c. (describing it, and being the same land in controversy), “to have and to hold,” &c. Then follows a covenant of general warranty by the said grantor with the said grantee; and then follows a declaration of trust in these words: “ In trust, nevertheless, for the sole, separate and exclusive use, benefit and support of the said Julia A. Quesenberry during her life, and after her death to the children of the said Julia A. Quesenberry, and no other person or persons whatsoever.”
• This deed was signed and sealed by the said grantor and trustee, was attested bj7 three witnesses, and was afterwards, to-wit: on the 17th of January, 1818, acknowledged, proved and duly admitted to record.
The plaintiffs next introduced as evidence a copy of a record of a chancery suit instituted in the circuit court of Culpeper? in April, 1872, wherein John S. Quesenberry and J. M. Quesenberry were plaintiffs, and Albert Quesenberry was defendant, which copy is set out in the record in this cause. The object of the suit was to obtain the legal title to the land in controversy, the plaintiffs claiming to be already the owners of the equitable title thereto. Kb allusion whatever is therein made to a sale which had been made of the land by the said trustee under a decree of the county court of Culpeper, as hereinafter mentioned. The bill in said suit was taken for confessed as to the defendant therein, the said Albert Quesenberry; and in the same year, to-wit: on the 6th of June, 1872, a decree was made in said suit for the conveyance of the legal title to said land to the said plain *495 tiffs by a commissioner of the court appointed for the purpose; which conveyance was accoi’dingly thereafter made.
“ The defendant, to maintain the issue joined on his part, proved by himself that he purchased the said tract •of land from Col. "W. S. Coons, in the year 1856, for the , . „ ... , sum of $3,000, and obtained possession of said land about that time, and had had possession until the time of giving his said testimony; that he paid the whole of the purchase-money between 1856 and 1859, but did not get a deed for the land until 1868, when it w'as conveyed to him by deed from said Coons and wife, in the following words and figures, to-wit.” (Here follows a copy of the ■deed in the record, but it need not be inserted here, nor further noticed, than to say that it recites that “ the war •and other causes intervened to prevent a deed being executed; ” that it was duly executed, certified and recorded).
The defendant then called another witness, the said ~W. S. Coons, who proved that he purchased the said ti’act ■of land of Albert Quesenbeny, commissioner, for the price of about $2,600; that he paid all the purchase-money to said commissioner, and obtained possession of •said land, and thereafter a deed therefor from the said ■commissioner.
The defendant then offered and road as evidence in the case a copy of the said deed, which was duly acknowledged by the said commissioner, and admitted to record September I9tli, 1853. It is copied in the record in this case, but need not be further noticed than to say, that.it is a full and formal deed, dated the 19th day of Septembei’, 1852, between the said parties, reciting the said decree, the appointment of said commissionei’, the sale made by him under the same in June, 1852, the purchase of said land by said Coons at said sale at the price of $8 per aci’e, and the full payment by him of the purchase-money; in consideration whei’eof the said commissioner *496 thereby conveyed the said tract of laud to said Goons, his heirs and assigns forever, with special warranty, “according to the act of assembly.”
“ And then offered in evidence the record of a suit instituted in the county court of Culpeper in June, 1850, by Julia A. Quesenberry, wife of Albert Quesenberry, and her infant children, John S., Jos. N., Frances Ann, and Lucy Alberta Quesenberry, who sued by Geo. S. M. Payne, their next friend, against Albert Quesenberry, defendant, in the words and figures, to-wit.” Here follows a copy of the said record, which is inserted in the record of this case, but need not be further noticed here than as follows :
The bill and answer were filed and the decree for the sale rendered on the same day, to-wit: June 18th, 1850. The plaintiffs, after setting out in this bill the aforesaid trusts in regard to the said tract of land, aver that the “ property is in such a condition at present that they cannot enjoy it as beneficially as they could if the investment were changed. There are no sufficient buildings for the comfortable residence of your orators and oratresses, and they have no means to put such buildings upon it. If annually let to tenants, while they reside elsewhere, the land must necessarily depreciate in value. A sale of the property and the investment of the proceeds in some safe security, bearing interest, would be much more beneficial to your orators and oratresses than its annual rents would be. They therefore ask a decree authorizing such sale and investment; ” and to that end pray that said Albert Quesenberry be made a party to said bill, and be required to answer the same, and be directed to sell the said land, &c.
By a certificate annexed to the bill, it appears that on the same day the next friend therein named, George S. M. Payne, made oath before a justice of the peace that *497 the statements therein contained were true to the best of his knowledge and belief.
Exhibit A, filed with the said bill, is a copy of the deed of the 15th of November, 1847, before referred to, “between John P. Eant of the first part, Albert Quesenberry of the second part, and Julia A. Quesenberry of the third part.”
In the answer of the said defendant he admits the truth of the allegations in the bill, and submits the subject to the discretion of the court; and by an affidavit annexed to said answer it appears that respondent made oath that the statements therein contained were true to the best of his knowledge and belief.
In the only deposition taken in the case, to-wit: that of Richard T. Nalle, which was “taken in the presence of James Barbour, counsel for Julia A. Quesenberry and her infant children, George S. M. Payne, next friend to the said parties, and Albert Quesenberry, to be read as evidence in ” the said case ; the said deponent being first duly sworn, deposed and said as follows, to-wit: “ That he well knows the land conveyed by the late John P. Eant to Albert Quesenberry in trust for his wife and children, and he knows that the buildings are insufficient for the comfortable residence of the family.”
In the decree made in the case on the same day, to-wit : the 18th of June, 1850, it was decreed “ that Albert Quesenberry, after first advertising the time and place of sale for at least six weeks, do proceed to sell the tract of land in the bill mentioned at public sale to the highest bidder, upon such terms of credit as he may deem most expedient for the eestuis que trust in the bill mentioned, and that he report his proceedings under this decree to this court whenever he shall effect a sale.”
On the 21st of March, 1853, the said commissioner reported to the said court that in pursuance of the said *498 decree of the 18th of June, 1850, “he did, after having advertised the same for six weeks, expose tt> sale at pubr lie auction, on the premises, the land aforesaid, on the 28th day of June, 1852, when and where Winfield S. Coons became the purchaser at $8 per acre, upon the following terms, to-wit: one-third for cash, the balance in five equal annual payments, with interest from the day of sale, as follows, viz: ” Then follows a statement showing the gross amount of the sale, the expenses deducted therefrom, and the net proceeds. And the report thus concludes: “Leaving in the hands of your commissioner the above amount of $2,491.11, for which amount the said Coons has executed his bonds as follows: The first bond for the sum of $816.89-|, payable on demand, it being for the cash payment, and five other bonds for $334.841-5 each, bearing date with the first, to-wit: the 28th day of June, 1852, payable annually for five years from the date aforesaid, with the interest from their dates respectively.”
On the same day, to-wit:'the 21st of March, 1853, the cause coming on again to be heard on the papers formerly read and the said report of the commissioner, was argued by counsel, on consideration whereof it was decreed that the said report be confirmed, and that the said commissioner do execute a deed with special warranty to said Coons for the land in the bill mentioned on.payment of the last instalment of the purchase-money.
To the introduction of which record the plaintiffs objected, and -moved the -court, to exclude the same; but the court, stating that it would only give to said record the weight to which it was entitled, overruled the said motion ; to which opinion of the court the plaintiffs excepted ; and this being all the evidence in the case the court rendered a judgment for the defendant; to which opinion and judgment the plaintiffs excepted.
*499 The plaintiffs applied to a judge of this court for a writ of error to the said judgment; which was accordingly awarded.
The only assignment of error made in the petition for a writ of error in this case is in these words:
“Tour petitioners are advised that the said judgment was erroneous because they have never been divested of their interest in said tract of laud. The proceedings in the county court of Culpeper in the name of Julia A. Quesenberry, &c., by George S. M. Payne, their next friend, against Albert Quesenberry, in which said land was decreed to be sold, was not binding upon your petitioners because they were not properly before the court. This proceeding was evidently intended t'o be under the act passed January 20th, 1832, entitled 4 an act authorizing the sale of trust estates in certain cases.5 See supplement to the Revised Code, p. 208, ch. 150. Rutyour petitioners are advised that said proceedings were not in conformity with the requirements of said act, so as to bind these petitioners by the decree of said court.”
The court is of opinion that the said proceedings were in substantial, if not literal, conformity with the requirements if the said act, and were binding on the parties thereto, and the sale made under the decree rendered therein w-as a valid sale, and conferred a good title on the purchaser.
The subject was undoubtedly within the jurisdiction of the court which rendered the decree. It was the sale of a trust estate; and one, too, in wdiich infants were interested; in each of which cases the statute law existing at the time of the rendition of the decree authorized the court to make the same. The judgment or decree of a court of competent jurisdiction over the subject matter thereof is conclusive against the parties thereto until it is set aside or reversed by some proceeding in *500 the case in 'the same or an appellate court. It cannot set asi^e or annulled in any collateral proceeding.
The authorities on this subject are very numerous, and many of them are cited in the pointed argument of the learned counsel for the defendant in error in this case, The following are cited from the decisions of this court: Fisher v. Bassett, 9 Leigh, 119; Ballard & als. v Thomas & Ammon, 19 Gratt. 14; Devaughan v. Devaughan, Id. 556; and Durrett v. Davis, 24 Id. 302. And the following are cited from the decisions of the supreme court of the United States, some of which, he truly says, “are extremely apposite”: Kempe's lessee v. Kennedy, 5 Cranch. 173; Thompson v. Tolmie & als., 2 Pet. R. 157; Ex parte Watkins, 3 Id. 193; Vorhees v. Bank of U. S., 10 Id. 449; Grignon’s lessee v. Astor, 2 How. U. S. R. 319; Florentine v. Barton, 2 Wall. U. S. R. 210; Harvey v. Tyler, Id. 328; and McGoon v. Scales, 9 Id. 23.
In Faulkner v. Davis & als., 18 Gratt. 651, decided by this court in 1868, the subject of such sales was very fully considered in an opinion in which all the judges concurred.
Two other cases were cited by the same counsel from the decisions of this court to show that even if the decree for the sale of the land in controversy were reversed or set aside, the title of the purchaser would not be affected thereby; according to the statute which declares that “ if a sale of property be made under a decree or order of a court after six months from the date thereof, and such sale be confirmed, though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby.” The cases here referred to are Cooper v. Hepburn, &c., 15 Gratt. 551; and Dixon, &c., v. McCue’s adm’r, &c., 21 Id. 373. The sale in this case was made more than six months after the date of the decree of sale, and more than six *501 months after the Code of 1849 went into effect, in which Code the above statutory provision was made.
But there was really no ground for reversing or setting aside the said decree, even by a regular proceeding for that purpose in the same or an appellate court. The learned counsel for the plaintiff in error seem to suppose that it was error to make the infant parties plaintiffs instead of defendants, and that therefore the decree was not binding upon them, they in effect, as said counsel ■contend, not being parties to the suit. There is nothing in the statute which requires them to be made defendants instead of plaintiffs. If they had been defendants they would not have been required to answer in person, none of them being as much as fourteen years of age. They would have answered, like any other infant defendants, by a guardian ad litem. They appeared in this case and filed their bill by their next friend, who was, no doubt, a very fit person for the purpose, and made oath to the facts stated in the bill, which were also fully proved by a witness who was examined in the mode prescribed by law in such cases, and whose veracity is unimpeached, and no doubt unimpeachable. And their mother was a co-plaintiff with them, and their father, who was the only defendant in the case, also made oath to the truth of the facts stated in the bill. That father was selected by the donor of the estate as the only trustee to hold it for the benefit of his wife during her life and of her children after her death; and there is no reason for believing that he was unworthy of the trust reposed in him.
The court is therefore of opinion that there is no error in the judgment, and that it ought to be affirmed.
Judgment affirmed.